STATE OF VERMONT

ENVIRONMENTAL COURT

| | |
|---|---|
| Appeal of Prudence L. Kelley and Wayne Stearns, Sr. | } } } } } | Docket No. 34-3-04 Vtec |

Decision and Order

Appellants Prudence L. Kelley and Wayne Stearns, Sr., appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Ferrisburgh, granting conditional use[1] approval for the construction of a house and on-site water supply and septic system, on the so-called Bookstaver lot. Appellants represent themselves, through their respective sons Peter J. Tomasi and Wayne Stearns, Jr., who hold their powers of attorney. Interested Persons Charles and Linda Piasecki also appeared and represent themselves. Appellee-Applicants Dwight Hyde, Ellen Flanders, John C. Bookstaver and Jane M. Orebaugh, are represented by James H. Wick and Joseph F. Obechowski, Jr. The Town of Ferrisburgh did not enter an appearance in this appeal. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. A site visit was taken at the conclusion of the hearing with the parties and their representatives. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence, as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

---

[1] We note that the Shoreland Zoning District section of the Zoning By-Laws, in §4.6(A), final sentence, requires site plan review for camps and single-family residences, "in regard to sewage, water, access, frontage and scenic considerations." However, no separate site plan review procedures or standards in fact appear in the Zoning By-Laws, and no separate standards other than the conditional use standards were applied by the ZBA.

Appellant Stearns owns a farm property near Lake Champlain on Schoolhouse Road in the Town of Ferrisburgh, improved with an existing farmhouse. The Stearns property is separated from Lake Champlain by a row of small existing lakeshore lots that were part of a 7-acre parcel of lakeshore land conveyed by the Stearns' predecessors in 1887. The lakeshore lots, created between 1895 and 1915, are located in the Shoreland zoning district.

The southernmost of those lakeshore lots ("the Bookstaver lot") is the .72-acre parcel that is the subject of the application on appeal. It is exempt from the minimum lot size requirements of the district as an existing small lot under §5.8. The southerly line of the Stearns property, extended to the lake, is the southerly line of the Bookstaver lot. An area in the southwest corner of the Stearns property and the southeast corner of the Bookstaver lot tends to be wet[2]; that area drains across the property line onto adjacent property to the south and then in a small channel or swale across the southeasterly corner of the Bookstaver lot to the lake. Other lakeshore lots to the south of the Bookstaver lot have access by another road to the south.

Adjacent to the north of the Bookstaver lot is an approximately one-third-acre lot owned by Appellant Kelley (also referred to in evidence as the Kelley/Tomasi lot). The Kelley/Tomasi lot is approximately 108 feet wide at its easterly boundary, tapering to 48 feet wide at the lake. The Kelley/Tomasi lot is improved with a small house. Its water supply is drawn from the lake; it is served by a septic holding tank rather than an on-site disposal system.

Adjacent to the north of the Kelley/Tomasi lot is an approximately half-acre lot owned by Linda and Charles Piasecki. The Piasecki lot is improved with a house served by a mound-type on-site septic system. The location or type of the Piasecki water supply was not presented in evidence. Based on the evidence of Appellee-Applicants' consultant, the location of the mound septic system on the Piasecki lot is likely already to preclude the

---

[2]  No evidence was presented as to whether any state wetlands regulations limit development in this area of either the Stearns or the Bookstaver properties.

2

installation of a well on the Kelley/Tomasi lot, without regard to the disposal system proposed by Appellee-Applicants, although actual measurements of the 100-foot separation distance from that system were not presented in evidence.

A private gravel drive known as Sunset Lane extends from Schoolhouse Road across the Stearns farm fields to the easterly line of the lakeshore lots approximately in the middle of the Piasecki lot, where it makes a T and extends both to the north and to the south to provide access for all the lakeshore lots. To the south, it extends across the Piasecki lot and the Kelley/Tomasi lot onto the Bookstaver lot. An apparent footpath continues across the Bookstaver lot onto the next property to the south.

Appellee-Applicants propose to place a house with a footprint of 1728 square feet on the Bookstaver lot, with an associated on-site mound or engineered septic system, meeting the required 25-foot side and rear setbacks and the required 80-foot lakeshore setback. The house is proposed to be located on a slab or on piers, to avoid creating any problems with the proposed septic system. The house is proposed to be located on the southerly side of the lot and the septic disposal field is proposed to be located on the northerly (Kelley/Tomasi) side of the lot, so as to be able to place an on-site well in the southeasterly corner of the property and meet a 100-foot separation distance[3] between the well and the on-site septic system. The well is proposed to be drilled by a technique that allows for the installation of a proper casing and for it to be sealed so as to exclude any influences from lake water, surface water, or septic systems. As conditional use standard §9.4(A)(4) requires a finding that the proposal will not adversely affect municipal "bylaws in

---

[3] This separation distance is found in §440.6(D)(a) of the Subdivision Regulations, and not in the Zoning By-Laws. The Subdivision Regulations, which are not directly applicable to this project as no subdivision of land is proposed, also require that individual septic systems "meet the requirements of the municipal health regulations." §440.6(C). Appellee-Applicant's consultant's water and wastewater design package, in evidence as Exhibit 1, states in paragraph A that the project's "on-site water and wastewater disposal systems . . . comply with the Vermont Environmental Protection Rules in accordance with the Town of Ferrisburgh's Subdivision Regulations" and in paragraph J that the Town's "Conditional Use Regulations . . . reference the Vermont Environmental Protection Rules," However, the Court has not found (and the parties have not otherwise cited) any reference to or incorporation of the state Agency of Natural Resources (ANR) Environmental Protection Rules in the Zoning By-Laws.

effect," if the Town does incorporate the State standards in other bylaws not provided in evidence, such as municipal health regulations or on-site sewage regulations, such additional municipal bylaws would be applicable to the present proposal through §9.4(A)(4).

The proposal meets all the setback requirements of the zoning ordinance.[4] Appellee-Applicants propose to limit tree cutting and to preserve the older trees, but have not stated this limitation or marked the specific older trees on any site plan in connection with their proposal. If most of the trees are preserved, because of the small area proposed to be disturbed, there is little danger of erosion during or after construction, and little danger of increased stormwater runoff. The upgradient agricultural use on the Stearns property is well-managed so as not to place undue drainage or erosion onto the Bookstaver lot.

Appellants argue that the proposed development will adversely affect the appropriate use or development of both the adjacent Kelly/Tomasi property and the adjacent Stearns property, and therefore fails to comply with §9.4(A)(6). Appellant Kelley is concerned that the placement of the proposed septic system will make it impossible to place a well anywhere on the Kelley/Tomasi lot for future year-round use of that property. Appellant Stearns is concerned that the placement of the proposed well will limit the potential future uses for the Stearns property upgradient of the well.

---

[4] Appellants argue that the well location is so close to the Stearns boundary as to fail to meet a 50-foot setback from agricultural cropland required by the ANR Environmental Protection Rules. However, nothing in the Zoning By-laws (or any other bylaws provided to the Court) requires a well to meet the state ANR water supply rules in order for a property to qualify for a zoning permit. See footnote 3, above.

While the proposal will not affect any existing improvements on any adjacent property, that is not the standard in the zoning bylaws. Rather, to grant conditional use approval, the ZBA, and hence this Court, must find that the proposal will not adversely affect the appropriate use or development of adjacent property. Under §9.4(B), the Court may impose any conditions necessary to protect the best interests of the surrounding property, including but not limited to[5] the specific listed conditions.

The location of the proposed on-site septic system does impair potential development of an on-site well for the neighboring Kelley/Tomasi property, even though the suitable sites for a well on the Kelley/Tomasi property may already be impaired by the location of the Piasecki on-site disposal system. Appellee-Applicants did not prove that the potential for locating a well on the Kelley/Tomasi property was entirely precluded by the location of the Piasecki mound system, and did not present evidence on the location of that system with reference to the Kelley/Tomasi property line. Accordingly, to protect the best interests of the Kelly/Tomasi property, the Court will add a condition that Appellee-Applicants have the well installed on their property properly sized and equipped so that it could potentially serve the Kelley/Tomasi property in addition to the Bookstaver property, if in some future permit proceeding the Kelley/Tomasi property was shown to qualify for such future permit but for the ability to locate a drilled well on the Kelley/Tomasi lot due to the improvements on the Bookstaver lot. The parties should note that this is not a requirement at the present time for Appellee-Applicants to provide a water supply for the Kelley/Tomasi lot. Rather, it is a requirement that they develop the well so as to make it possible to do so in the future, if in some future proceeding the Kelley/Tomasi applicants can show that they would have qualified for their permit in every respect except for the ability to install a drilled well on their property, and that their inability to install a well was due to the location of the septic system on the Bookstaver lot.

Aside from the issue of whether the location of the proposed well is within a right-of-

---

[5] The language is that the "conditions may include, among others," the listed specific conditions.

way (discussed below) Appellant Stearns did not show that the location of the proposed well impairs or affects the potential development of the neighboring farm field, either for farming or for any other purpose. Even if Appellant Stearns sought to develop the farm field for residential lots, which would need on-site septic systems, there was no evidence that there would be any problems designing such a development in compliance with the subdivision regulations, that is, to comply with the 100-foot separation distance between a well and a septic system.

Appellants also claim that, contrary to (or as well as) the location on the ground of the traveled way of Sunset Lane across the Stearns property, the deeded right-of-way runs along or near what is now the Stearns southerly line, so that the deeded access for all the lakeshore lots would actually turn to the north and run across the Bookstaver property along or near the Bookstaver easterly lot line, over the area proposed for the well location. Appellants argue that Appellee-Applicants therefore should be precluded from installing a well within that claimed deeded right-of-way.

Appellee-Applicants first argue that neither Appellant Stearns nor Appellant Kelley were granted or reserved rights-of-way over the Bookstaver parcel. They argue further that, in any event, the actual use of Sunset Lane, which runs through the middle of the Stearns field rather than along its southerly line, has superseded the lakeshore lot owners' claims to use a right-of-way along the Stearns southern boundary and over the Bookstaver lot.

As explained to the parties several times prior to the trial, this Court cannot resolve disputed property rights as between the parties; such matters must be filed in superior court. At least based on the Court's inquiries of the parties in pretrial conferences and as of the time of trial, none of the parties had chosen to file a declaratory judgment or a quiet title action in superior court. All that this Court has jurisdiction to do in the present appeal is to determine whether project applicants have met their burden of proof that a proposed project meets the requirements of the applicable zoning regulations.

The parties should note that this decision does not in any way rule on the question of whether there is a deeded right-of-way running along the southerly edge of the Stearns field to the Bookstaver lot, or whether such a deeded right-of-way turns and continues

6

northerly, either on the easterly edge of the Bookstaver lot or on the Stearns property immediately adjacent to the Bookstaver lot. If such a deeded right-of-way exists and has not been extinguished, it may affect the parties' property rights with respect to the proposed development. The fact that this decision has granted conditional use approval to Appellee-Applicants does not determine whether the claimed right-of-way location precludes this proposed development; if that issue is to be litigated, it must be litigated in superior court. Therefore, this decision specifically has no collateral estoppel effect on any potential superior court litigation to establish the parties' respective property rights with respect to the deeded right-of-way.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicants' application for conditional use approval to place a single-family residence on the so-called Bookstaver lot is hereby approved, subject to the conditions imposed by the ZBA and the following additional conditions:

Condition 3 is amended to add the following requirement at the beginning of Condition 3, before the existing language:

3. A tree preservation and removal plan shall be prepared to be incorporated in the approved permit, to identify the trees marked for preservation as they were shown to the ZBA during its site visit; those trees specifically to be preserved shall also be marked on the property prior to construction to identify them for preservation during construction. The trees to be removed shall be also marked and the removal approved as provided in the existing language of Condition 3.

An additional Condition 8 is imposed as follows:

8. Appellee-Applicants shall have the well installed on their property properly sized and equipped so that it could potentially be connected to serve the Kelley/Tomasi property in addition to the Bookstaver property, if in some future municipal permit proceeding the Kelley/Tomasi property is shown to qualify for such future permit, but for the ability to locate a drilled well on the Kelley/Tomasi lot as a result of the improvements on the Bookstaver lot that are the subject of the present permit.

7

Dated at Berlin, Vermont, this 19th day of August, 2005.


_____
Merideth Wright
Environmental Judge